## SCHENCK a. CAMPBELL.

*New York Superior Court; General Term, November,* 1860.

INJUNCTION.—VENDOR AND PURCHASER.—COVENANT AGAINST
NUISANCES.

The vendor of city lots required from the purchaser a covenant against the erection of any livery stable, &c., on the premises sold, and on his own part covenanted that no more than two houses should be erected on the residue of the land owned by him.

*Held,* that the purchaser was entitled to an injunction restraining the vendor from erecting a livery stable on the residue.

In such a covenant, the word house may be understood as meaning dwelling-house.

Appeal from an order denying a motion to vacate an injunction theretofore granted against the defendants.

*J. T. Williams,* for defendants, appellants.

*W. Curtis Noyes* and *B. D. Silliman,* for plaintiff, respondent.

BY THE COURT.*—MONCRIEF, J.—The defendant Campbell, in the year 1855, being the owner of a plot of ground corner of Fifth avenue and Thirty-second-street, sold and conveyed one-third part thereof to the plaintiff. The agreement provided, and the conveyance contained covenants, that the plaintiff should not permit any livery, stage, or omnibus stable, &c., on the premises conveyed to him; and the defendant Campbell covenanted that "no more than two houses should be erected on the residue of the land owned by him," &c.

Some time about March, 1860, the defendant Campbell having agreed to lease said residue of land (less one lot sold to Mrs. Underhill) to the defendant Hager, and to erect thereon a livery

---

* Present. BOSWORTH, Ch. J., J. HOFFMAN, WOODRUFF, MONCRIEF, and ROBERTSON, JJ.

stable, and being engaged in preparing to erect such livery stable, and intending it to be occupied by said Hager as and for a "livery stable, as soon as he could," application was made to a justice of this court for an injunction restraining the defendants, and it was granted.

The defendants, upon affidavit, obtained an order to show cause why said injunction should not be set aside, &c., and the respective parties having been heard, an order was made denying the motion to dissolve the injunction.

From this order the defendants appealed.

The agreement and the covenants in the deed between the plaintiff and the defendant Campbell, in my opinion, manifest a clear intention to enhance the value of the adjacent property. The plaintiff was restricted against permitting on the premises any livery, stage, or omnibus stable, slaughter-house, butcher's or meat shop, tallow-chandlery, smith-shop, forge, furnace, steam-engine, manufactory of certain designated articles, or in which any kind of business, noxious or dangerous to the neighboring inhabitants should be carried on; this language, in its plain, ordinary, and popular sense, would seem to carry an implication that the adjoining lands owned by the grantor (Campbell), and receiving such a covenant, were to be subject to a like restriction, and adapted to some particular use and purpose, and with this in view, the deed contains immediately following, a covenant on the part of the grantor (the defendant Campbell), that "no more than two houses shall be erected on the residue of the land owned by me between the premises conveyed and the corner of Thirty-second-street."

It is perfectly obvious in what sense the plaintiff construed the covenants in the deed. If the words "two houses" have other meaning than two dwelling-houses, of the general character and description adopted, and used in that particular locality for private residences, to him the covenants were a "delusion and a snare."

The defendant Campbell subsequently conveyed (1857) to Mrs. Underhill twenty-six feet of the residue of the premises (at a greatly advanced price), the deed therefor containing a clause against nuisances, &c., and a covenant by the grantor, "that only one dwelling-house shall be erected" upon the land conveyed.

In Turner *a*. Evans (2 *Ellis. & Blackb.*, 518), the rule is laid down that " the language of all contracts must be construed with reference to the circumstances attending the particular transaction. We are to look at the whole instrument, and the object of the parties, and see what is the intention of the parties, to be collected from the whole of the language with reference to those."

The object of the plaintiff was expressly stated to the defendant Campbell at the time of making the agreement to purchase, " to be the erection of a very expensive house;" this is distinctly averred by the complaint, and is not denied by Mr. Campbell.

The plaintiff did erect a very expensive house, intended for, and used by him as a private residence, at a cost of over $50,000.

Mrs. Underhill also erected a first-class dwelling-house upon the premises conveyed to her.

The specific class of buildings, or the purposes against which there was to be a special restriction, characterized by Mr. Campbell as " the usual nuisance clause," had its origin probably in the fact that Mr. Campbell held his title to the lands in question subject to such restriction.

The defendant Campbell must have known the sense in which the plaintiff accepted the promise and covenant not to build more than " two houses" on the residue of the land.

The defendant Campbell intended, by the use of the words " two houses," to restrict and confine the residue of his land to the erection of two dwelling-houses; it was his interest at that time to do so; subsequently, giving this construction to the words of his covenant, he " often applied to said plaintiff to remove said restriction, so as to allow him (defendant) to put up three dwelling-houses," &c., &c. Again, the defendant Campbell, mindful of his covenant with the plaintiff when he conveyed a portion of the " residue of his land" to Mrs. Underhill, was unembarrassed in defining what was intended and to be understood by the term " two houses;" his grantee was required to covenant that only " one dwelling-house" should be erected on the premises conveyed.

If the words are to be taken in their ordinary and popular meaning. Webster says: a " 'house' in a general sense, means

a building or shed intended or used as a habitation or shelter for animals of any kind, but appropriately a building or edifice for the habitation of man, a dwelling-place, mansion, or abode for any of the human species." Tomlin's Law Dictionary defines a "house" to be "a place of dwelling or habitation."

If an advertisement should appear in one of our city newspapers, offering "for sale or to be let two houses situated on the Fifth avenue, between Forty-second-street and the Parade Ground," it seems to me not unreasonable to suppose that the great majority of the readers would be disappointed upon being advised that it did not refer to first-class dwelling-houses; and the astonishment of all of common understanding would, I think, be quite general, when informed that the "two houses" were simply places of shelter for horses, and not intended as a habitation for man.

The order denying the motion to vacate the judgment was clearly right, and must be affirmed, with $10 costs.